UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID COLTRIN,<br><br>    Plaintiff,<br><br>  v.<br><br>JAMES B. NUTTER & COMPANY,<br><br>    Defendant. | No. 2:19-cv-00483-JAM-DMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court on Defendant James B. Nutter & Company's ("Nutter") Motion to Dismiss. Mot., ECF No. 7. Plaintiff David Coltrin ("Coltrin") filed an opposition, Opp'n, ECF No. 10, to which Nutter replied, Reply, ECF No. 11. After considering the parties' briefing and relevant legal authority, the Court GRANTS Nutter's Motion to Dismiss.[1]

I. BACKGROUND

On May 9, 2008, Coltrin entered into a reverse mortgage with Nutter, wherein he received a $456,000.00 loan secured by the real property located at 27 Nash Lane, Oroville, California 95966

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for May 7, 2019.

1

("the Property"). Compl., Ex. A, ECF No. 1-2, pp. 20-30.  As a reverse mortgage, the loan provided Coltrin with a cash advance based on the value of his residence and did not require payments of the loan's principle or interest until the entire loan became due and payable on February 1, 2094.  Id.  Coltrin was responsible for paying property charges for the property, including governmental and municipal charges, taxes, and insurance premiums.  Id. at 20-21.  If Coltrin failed to pay these charges, Nutter would pay whatever is necessary to protect the value of the Property, but Coltrin's failure to perform his obligations could result in acceleration of the debt and foreclosure of the Property.  Id. at 21-22, 25.

Coltrin failed to perform his obligations and Nutter eventually sought foreclosure.  See Compl.  On March 28, 2018, Quality Loan Service Corporation recorded a Notice of Default on the Property with the Butte County Recorder's Office because Coltrin owed $54,852.34.  Compl., Ex. B, ECF No. 1-2, pp. 32-35.  The Notice of Default issued because Coltrin failed to maintain hazard insurance on the Property and failed to pay property taxes prior to the delinquency date, in violation of the mortgage's terms.  Id. at 33.  Quality Loan Service Corporation recorded a Notice of Trustee's Sale, scheduled for December 19, 2018, with the Butte County Recorder's Office on November 6, 2018.  Compl., Ex. C, ECF No. 1-2, pp. 37-38.  On December 20, 2018, Nutter sent Coltrin a letter acknowledging the company had received correspondence from him.  Compl., ECF No. D, ECF No. 1-2, p. 40.

///

///

II. OPINION

A. <u>Requests for Judicial Notice</u>

Nutter requests the Court take judicial notice of 13 exhibits related to Coltrin's bankruptcy filings and a state agency report regarding the California Residential Mortgage Lending Act. RJN, ECF No. 7-4, pp. 2-93. Coltrin does not acknowledge Nutter's request for judicial notice in his opposition.

"Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion . . . it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." <u>United States v. 14.02 Acres of Land</u>, 547 F.3d 943, 955 (9th Cir. 2008) (quoting <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001)). To take judicial notice of a fact, the fact must be either "generally known within the trial court's territorial jurisdiction" or able to be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. While courts may take judicial notice of matters of public record, they may not take judicial notice of "disputed facts stated in public records." See <u>Lee</u>, 250 F.3d at 690.

Therefore, the Court takes judicial notice of the existence of bankruptcy court dockets and filings (Exhibits 1-12), but not the veracity of any disputed facts recited therein. See <u>id</u>. The Court will also take judicial notice of the 2017 annual report from the California Department of Business Oversight on

3

the Operation of Lenders and Servicers (Exhibit 13). See, e.g., Davis v. Nationstar Mortg., LLC, No. 216CV2599KJMCKDPS, 2016 WL 7178466, at *5 (E.D. Cal. Dec. 9, 2016), report and recommendation adopted, No. 216CV2599KJMCKDPS, 2017 WL 2022261 (E.D. Cal. May 12, 2017) ("The court finds that judicial notice of the documents from the . . . California Department of Business Oversight is proper as these documents are public records containing facts capable of accurate and ready determination by a source whose accuracy cannot be questioned.").

B. Nutter's Motion to Dismiss

1. Claims I-IV: Violations of the Homeowners Bill of Rights, California Civil Code § 2920, et seq.

Four of Coltrin's six claims arise out of the Homeowner Bill of Rights ("HBOR"), California Civil Code § 2920, et seq. These claims allege that Nutter failed to assign a single point of contact, in violation of Cal. Civ. Code § 2923.7 (first claim); failed to provide Coltrin with foreclosure alternatives, in violation of Cal. Civ. Code § 2924.9 (second claim); failed to rescind the foreclosure after Coltrin filed a loan modification application before the sale date, in violation of Cal. Civ. Code § 2924.11 (third claim); and engaged in dual tracking, in violation of Cal. Civ. Code § 2924.18 (fourth claim). Coltrin has voluntary dismissed his fourth claim under Cal. Civ. Code § 2924.18. Opp'n at 2.

a. Cal. Civ. Code § 2923.7

Coltrin's first claim alleges that Nutter violated California Civil Code section 2923.7 by failing to assign him a

4

single point of contact during the foreclosure process.  Section 2923.7(a) provides that "[w]hen a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."  Cal. Civ. Code § 2923.7(a).  The section does not apply to "a depository institution chartered under state or federal law . . . that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California."  Cal. Civ. Code § 2923.7(g)(1).

Nutter argues that it is not subject to liability under the "large servicer" provisions of the HBOR because it foreclosed on fewer than 175 residential properties during the prior reporting period.  Def.'s Mem., ECF No. 7-3, pp. 6–8.  Coltrin does not allege that Nutter foreclosed on 175 or more residential properties in his Complaint and does not does not respond to this argument in his opposition.  Furthermore, Coltrin has not provided any arguments that could cure the deficiencies in this claim, given Nutter is not listed on the list of servicers who foreclosed on 175 or more homes.  See RJN, Ex. 13.  Accordingly, since Coltrin has not disputed the fact that Nutter is a small servicer to which section 2923.7 does not apply, this claim is dismissed with prejudice.  See, e.g., Alvarado v. 360 Mortg. Grp., LLC, No. 17-CV-04655 NC, 2017 WL 4647752, at *3 (N.D. Cal. Oct. 16, 2017).

///

### b. Cal. Civ. Code § 2924.9

Coltrin's second claim alleges that Nutter violated California Civil Code section 2924.9 by failing to provide him with foreclosure alternatives. Section 2924.9 states that "[u]nless a borrower has previously exhausted the first lien loan modification process offered by, or through, his or her mortgage servicer . . . a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a written communication to the borrower that includes" three required provisions. Cal. Civ. Code § 2924.9(a)(1-3). The section's requirements do not apply to entities described in section 2924.18(b). Cal. Civ. Code § 2924.9(b).

Section 2924.18 "appl[ies] only to a depository institution chartered under state or federal law . . . that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California." Cal. Civ. Code § 2924.18(b). As stated above, the undisputed facts are that Nutter foreclosed on fewer than 175 residential properties in California in the preceding annual reporting period. Thus, as Nutter would be an entity described in section 2924.18(b), the foreclosure alternative requirements of section 2924.9(a) do not apply to Nutter. This claim is dismissed with prejudice.

### c. Cal. Civ. Code § 2924.11

Coltrin's third claim alleges that Nutter violated California Civil Code section 2924.11 by failing to rescind the foreclosure after Coltrin filed a loan modification application

before the sale date.  Coltrin notes in his opposition that the California Legislature amended California Civil Code § 2924.11 effective January 1, 2019.  He now argues his claim now arises out of California Civil Code section 2923.6.  Opp'n Mem., ECF No. 10, p. 6.

The relevant statutory provision states "[i]f a borrower submits a complete application for a first lien loan modification . . . a mortgage servicer . . . shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending."  Cal. Civ. Code § 2923.6(c).  Mortgage servicers are not obligated to evaluate multiple applications "unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."  Cal. Civ. Code § 2923.6(g).

Like California Civil Code section 2924.9, sections 2923.6 and 2924.11 both contain provisions that limit the sections' application to large servicers not covered by section 2924.18.  See Cal. Civ. Code § 2923.6(i) ("Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18."); Cal. Civ. Code § 2924.9(b) ("This section shall not apply to entities described in subdivision (b) of Section 2924.18."); Cal. Civ. Code § 2924.11(i) ("This section shall not apply to entities described in subdivision (b) of Section 2924.18.").  As detailed above, Nutter falls within the small servicer description of section 2924.18(b).  Since

neither section 2923.6 nor section 2924.11 apply to Nutter, this claim is dismissed with prejudice.

### 2. Claim V: Negligence

Coltrin's fifth claim alleges that Nutter acted negligently in handling Coltrin's loan modification application. Compl. at 6-10. Nutter argues that it owes Coltrin no duty of care and that Coltrin did not suffer any damages as a result of Nutter's conduct. Def.'s Mem. at 10-12.

The elements of a negligence claim in California are: (1) a legal duty to use due care; (2) a breach of that legal duty; and (3) the breach as the proximate or legal cause of a resulting injury. Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 62 (Ct. App. 2013). "Whether a duty of care exists is a question of law to be determined on a case-by-case basis." Id. Courts balance six factors to determine whether a financial institution owes a duty of care to a borrower-client:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1098 (Ct. App. 1991) (quoting Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958)). While lenders have no duty to offer or approve loan modification applications, Lueras, 221 Cal. App. 4th at 68, a duty may arise where a servicer agrees to consider a borrower's loan modification application and mishandles it, Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th

8

941, 948 (Ct. App. 2014).

The California Supreme Court has not addressed what common law duties a loan servicer owes a borrower with respect to submission of a loan modification application. The Ninth Circuit, however has limited the reach of Alvarez. Anderson v. Deutsche Bank Nat. Tr. Co. Americas, 649 F. App'x 550, 552 (9th Cir. 2016) (unpublished). The Ninth Circuit's decision in Anderson, considered for its persuasive value, see Fed. R. App. P. 32.1, held that lenders do not owe borrowers a duty of care to process a loan modification application within a particular timeframe. 649 F. App'x at 552. While Coltrin bases his negligence claim on different conduct, Anderson's reasoning is equally compelling. See, e.g., Saldana v. Wells Fargo Bank, N.A., 367 F. Supp. 3d 1063, 1071-72 (N.D. Cal. 2019) (dismissing negligence claim premised on bank's alleged failure to provide adequate information and providing unjustified explanations).

This case presents a different factual pattern than that seen in most other foreclosure cases. The parties contracted for a reverse mortgage wherein the lender (Nutter) paid the borrower (Coltrin) $456,000 in cash, rather than a typical mortgage where the borrower pays monthly payments to the lender. The default was caused by Coltrin's failure to pay government taxes and insurance, rather than a failure to pay monthly mortgage payments. The alleged harm suffered by Coltrin for issues related to the loan modification process is not "primarily attributable" to Nutter. Rather, the requested modification was necessary due to Coltrin's failure to pay his property taxes and insurance after he received $456,000 from

9

Nutter. See Anderson, 649 F. App'x at 552 ("Rather, when, as here, 'the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, [is] not ... closely connected to the lender's conduct.'" (quoting Lueras, 221 Cal. App. 4th at 67)). Nutter did not place Coltrin in the position of needing a loan modification, and thus no moral blame attaches to Nutter's conduct. See id.

Coltrin has not shouldered his burden of establishing that Nutter owed him a duty of care with respect to the loan modification of his reverse mortgage. Because the terms of the reverse mortgage and Coltrin's violation of those terms are undisputed, the Court denies leave to amend on this claim because the pleading could not possibly be cured by the allegation of other facts. This claim is dismissed with prejudice.

### 3. Claim VI: Unfair Business Practices, Violation of Cal. Bus. & Prof. Code § 17200, et seq.

Coltrin's sixth claim alleges Nutter violated California Business and Professions Code section 17200 et seq. ("the UCL"), prohibiting unfair business practices. Compl. at 10-12. Nutter contends that Coltrin lacks standing and has not alleged unlawful, unfair, or fraudulent conduct by Nutter. Def.'s Mem. at 13-15.

The UCL's definition of "unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising" and other acts prohibited under specified sections of the Business and

Professions Code. Cal. Bus. & Prof. Code § 17200. "A plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation." Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (Ct. App. 1993).

Even assuming that Coltrin lost money or property as a result of Nutter's conduct, he has failed to state a UCL claim. Nutter's alleged conduct is not "unlawful" because Coltrin has failed to demonstrate that the conduct was in violation of any other law. See Khan v. CitiMortgage, Inc., 975 F. Supp. 2d 1127, 1145 (E.D. Cal. 2013). The Court has dismissed all other claims in this case.

Similarly, the alleged conduct does not qualify as "unfair" because it does not "offend[] an established public policy" and is not "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," under the facts Coltrin alleged. Id. (quoting Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (Ct. App. 1996)). Viewing the Complaint in the light most favorable to Coltrin and accepting all his factual allegations as true, Nutter's foreclosure on the Property after Coltrin accepted $456,000 and then failed to pay his property taxes and insurance could not be considered to be unfair.

Finally, Nutter's alleged conduct is not "fraudulent" because there is no evidence of "deception to some members of the public, or harm to the public interest." Id. (quoting Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001)). Coltrin's Complaint offers conclusory

11

statements about alleged deception and misleading conduct.  At no point does he offer any supporting facts, stated with reasonable particularity, in support of his perfunctory, boilerplate allegations.

Coltrin's complaint lacks reasonable particularity of facts to support a UCL claim.  What the Complaint alleges is insufficient to establish that Nutter engaged in unfair business practices under the UCL.  Coltrin has not proposed any proposed amendment capable of curing the deficiencies of his Complaint.  The Court dismisses Coltin's UCL claim with prejudice.

C. Sanctions

The Court issued its Order re Filing Requirements ("Order") on March 18, 2019.  ECF No. 4-2.  The Order limits memoranda in support of and in opposition to motions to dismiss to fifteen pages and reply memoranda in support of motions to dismiss to five pages.  Id. at 1.  The Order also states that an attorney who exceeds the page limits must pay monetary sanctions of $50.00 per page and that the Court will not consider any arguments made past the page limit.  Coltrin's 22-page opposition memorandum exceeds the page limit by seven pages.  The Court has not considered any arguments made after page fifteen of the opposition brief.

The Order also requires parties meet and confer prior to the filing of motions.  Id. at 2.  Nutter's counsel details his attempts to satisfy the meet and confer requirement, which were met with silence by Coltrin's counsel.  Gouzoules Decl., ECF No. 7-2.  The Court ordered Coltrin's counsel to submit a declaration explaining his failure to respond to efforts to meet and confer.

Minute Order, ECF No. 9.  Coltrin's counsel failed to acknowledge or comply with this order.  Accordingly, the Court sanctions Coltrin's counsel an additional $500.00 for failing to comply with the meet and confer requirement.

### III.  ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss.  The Clerk of Court is directed to close the case.

Additionally, the Court ORDERS Coltrin's counsel to pay $350.00 in sanctions for exceeding the Court's page limits and $500.00 in sanctions for failing to comply with the Court's meet and confer requirement, for a total of $850.00 in sanctions.  Sanctions shall be paid to the Clerk of the Court within five (5) days of the date of this Order.

IT IS SO ORDERED.

Dated:  May 20, 2019

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE